**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240420-U

Order filed July 7, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0420 Circuit No. 23-DT-10 |
| | ) | |
| YANCY M. TYLER, | ) ) | Honorable Chrystel L. Gavlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hettel and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion in refusing to give the defendant's proposed jury instruction.

¶ 2     The defendant, Yancy M. Tyler, appeals from his conviction for driving while under the influence of alcohol (DUI), arguing the Will County circuit court abused its discretion in refusing to give the defendant's proposed non-pattern jury instruction.

¶ 3                                    I. BACKGROUND

¶ 4    The defendant was charged by traffic citation with DUI (625 ILCS 5/11-501(a)(2) (West 2022)). The case proceeded to a jury trial on October 16, 2023. Romeoville police officer Alexandra Miravete testified she graduated the police academy in 2020. She was trained in DUI detection and field sobriety testing. Miravete completed an Advanced Roadside Impaired Driving Enforcement course in February 2022.

¶ 5    On January 1, 2023, at approximately 3:40 a.m., Miravete observed a vehicle parked and facing the wrong way on an access road to the Romeoville High School parking lot. The vehicle's engine was running. Miravete approached the vehicle and saw the defendant unconscious in the driver's seat. There was vomit on the driver's side door and on the ground. Concerned for the defendant, Miravete knocked on the window several times but did not receive a response. The defendant awoke when Miravete opened the driver's side door. She detected a strong odor of an alcoholic beverage emanating from the vehicle. Miravete asked the defendant if he needed medical attention, and the defendant declined.

¶ 6    The defendant stated that he knew where he was but was unable to provide an answer when prompted. He "sounded shocked" when Miravete informed him where they were located. The defendant stated he vomited because he ate bad sushi. He did not want to answer questions because he "knew what this looked like because it was New Years."

¶ 7    Another officer arrived, and they began a DUI investigation. The defendant declined to recite the alphabet from E to V. When asked if he could count backward, the defendant initially said he could count forward and backward, but then said he could not because he was dyslexic. Miravete observed a strong odor of an alcoholic beverage emanating from the defendant's breath, his eyes were bloodshot and glassy, his speech was slow and mumbled, and he kept repeating that he was not impaired. The defendant first stated he did not consume any alcohol, but later stated he

had one beer. The defendant was not swaying and did not stumble throughout the DUI investigation.

¶ 8        Miravete explained that the horizontal gaze nystagmus (HGN) test is used "to see the involuntary jerking of the eyes." During the administration of the test, the officer looks for six clues, three in each eye, which included: lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset prior to 45 degrees. Miravete testified the second clue is present "if there's any impairment or potential impairment," and the third clue "could be a sign of impairment." Miravete observed all six clues when administrating the test to the defendant, which she believed "indicate[d] impairment." She asked the defendant if he had any problems with his eyes or head, and he indicated that he had a detached cornea in his left eye and had been hit in the head with a baseball bat two days prior, though he did not seek medical attention. Defense counsel made no objections to Miravete's explanation of the HGN test.

¶ 9        Miravete attempted to administer the walk-and-turn test, but the defendant interrupted during her explanation and demonstration. The defendant began the test but declined to finish. He declined to do the one-leg stand test because he had a bad back and crooked spine. Miravete formed the opinion that the defendant drove while under the influence based upon the totality of the circumstances and placed him under arrest. The defendant declined to submit to a breath test at the police station. Miravete's squad car dash camera video was entered into evidence and was largely consistent with her testimony.

¶ 10        On cross-examination, defense counsel asked Miravete about her training and the national highway standards. Miravete was trained with the National Highway Traffic Safety Administration manual. She testified that head injuries or issues with eyes can affect the results of the HGN test. She further acknowledged she was nearly six inches shorter than the defendant and that height

differences may impact the officer's ability to observe the subject's eye movements. Counsel did not ask Miravete any questions regarding whether the HGN test indicated consumption or impairment.

¶ 11    Defense counsel moved for a directed verdict, arguing that the HGN clues only indicate consumption, not impairment. After the court denied the motion, defense counsel asked that the jury be admonished that "the HGN indicators are of consumption alone, not indicators of impairment." The court declined to provide the proposed instruction, noting there was no objection made during trial. The jury was given several Illinois Pattern Jury Instructions (IPI).

¶ 12    The jury found the defendant guilty. The defendant filed a motion for a new trial. Relevant to this appeal, the defendant argued the court erred in denying his request to admonish the jury that the use of HGN evidence should be limited to proof of alcohol consumption and not as direct evidence of impairment pursuant to *People v. McKown*, 236 Ill. 2d 278 (2010). The court denied the motion. The defendant appealed.

¶ 13                                        II. ANALYSIS

¶ 14    On appeal, the defendant argues the court erred in refusing his request to instruct the jury that a failed HGN test is not conclusive evidence of impairment. "The purpose of jury instructions is to convey to the jurors the correct principles of law applicable to the evidence presented in the case before them." *People v. Ortiz*, 2017 IL App (1st) 142559, ¶ 50. "A non-IPI instruction should be used only if the IPIs for criminal cases do not contain an accurate instruction and if the tendered non-IPI instruction is accurate, simple, brief, impartial, and free from argument. [Citation.] Additionally, the instructions as a whole must not be misleading or confusing." *Id.* The court's refusal to issue a non-IPI instruction will not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion in the refusal of a non-IPI occurs only where there is no IPI applicable to the

subject on which the jury should have been instructed and the jury was, therefore, left to deliberate without proper instructions." *Id.*

¶ 15 Initially, we note that the defendant does not provide, and we are not aware, of any authority in which the circuit court abused its discretion in this or a similar situation. The defendant instead relies solely on *McKown*, 236 Ill. 2d at 305, for his argument that evidence of the results of a HGN test cannot be used as conclusive evidence of impairment, and, pursuant to *McKown*, "[l]imitation may take the form of sustaining an objection ***, giving a limiting instruction at the time the testimony is given, or giving a written jury instruction at the conclusion of the case." In *McKown*, the court considered "whether, in general, evidence regarding HGN testing of a defendant in a DUI prosecution is admissible *** and, if so, what circumstances must be present before such evidence may be admitted in a specific case." *Id.* at 310. The *McKown* court determined that evidence of a failed HGN test "is admissible for the purpose of proving that a defendant may have consumed alcohol and may, as a result, be impaired." *Id.* at 303. Therefore, "a testifying officer may use the HGN test results as a part of the basis for his opinion that the defendant was under the influence and impaired." *Id.* at 306.

¶ 16 Nothing in *McKown* requires an instruction be given in every case involving evidence of an HGN test. The *McKown* court was not asked, and therefore did not decide, whether a trained officer may testify a failed HGN test indicates impairment. The court instead only warned that a failed HGN test alone is insufficient to prove impairment beyond a reasonable doubt and that there should not be an "attempt to correlate the test results with any particular blood-alcohol level or range or level of intoxication." (Internal quotation marks and emphasis omitted.) *Id.* at 302. Regarding the propriety of Miravete's testimony, we find *People v. Korzenewski*, 2012 IL App (4th) 101026, ¶ 22, persuasive:

5

"Defendant points out that when [the officer] was asked '[W]hat can cause a nystagmus?' he responded 'Alcohol impairment' and 'Drug impairment.' [The officer] testified he observed all three clues of the HGN test in both of defendant's eyes. When asked what the lack of smooth pursuit in both of defendant's eyes indicated to him, [the officer] replied 'Alcohol impairment.' [The officer] also testified that his observation of the onset of nystagmus prior to 45 degrees in both eyes also indicated impairment based on his training. However, [the officer's] testimony did not cross the lines drawn in *McKown* *** because he candidly testified he did not know how much alcohol defendant had consumed, and he acknowledged the HGN test, on its own, is not conclusive evidence of intoxication."

¶ 17    Here, Miravete made no attempt to correlate the HGN results with a particular blood alcohol level and did not testify that the HGN test proved the defendant's impairment beyond a reasonable doubt. Miravete was consistent that the results of the HGN test "indicate[d] impairment," "could be a sign of impairment," and could show "if there's impairment or potential impairment." Miravete's opinion that the defendant was impaired was also not based solely on the results of the HGN test. Instead, she believed the defendant was impaired based on the totality of the circumstances, including the defendant's behavior, statements, appearance, the odor of an alcoholic beverage, and the circumstances in which Miravete discovered the defendant. She also admitted the limitations of the HGN examination, including how the results may be impacted by head injuries, eye issues, or height differences. Her testimony did not run afoul of *McKown* and *McKown* does not require a limiting instruction in all cases involving HGN evidence. Providing the non-IPI was therefore unnecessary, and, as a result, the court did not abuse its discretion.

6

¶ 18　　　　We further note that, to the extent *McKown* discusses the limiting HGN evidence, it indicates such limitation may take many forms, including an objection, which defense counsel did not make. *McKown*, 236 Ill. 2d at 305. Counsel could have limited the testimony by cross-examining Miravete on the procedures of an HGN test and what the results showed. For example, counsel could have asked whether the results of the HGN test indicate consumption or impairment. The defendant does not argue counsel was ineffective, and it was not the court's obligation to limit the evidence in this case.

¶ 19　　　　Regardless, any error was harmless given the overwhelming evidence of the defendant's guilt. Any error in instructing the jury may be deemed harmless "if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed." (Internal quotation marks omitted.) *People v. Mohr*, 228 Ill. 2d 53, 69 (2008). Here, there is no reason to believe the jury convicted the defendant because they did not receive counsel's proposed instruction. The defendant was unconscious in a running vehicle facing the wrong direction at approximately 3:40 a.m. on New Year's Day. There was vomit on the driver's side door and ground next to the vehicle. Miravete detected the odor of an alcoholic beverage in the vehicle and on the defendant's breath. The defendant's eyes were bloodshot and glassy, his speech was slow and mumbled, and he kept repeating that he was not impaired. Throughout their interaction, the defendant repeatedly interrupted Miravete and largely declined to submit to the field sobriety tests. The instruction would not have changed the outcome of these proceedings given this overwhelming evidence.

¶ 20　　　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 21　　　　The judgment of the circuit court of Will County is affirmed.

¶ 22　　　　Affirmed.